Heinz Binder, Esq. (SBN 87908)
Robert G. Harris (SBN 124678)
Wendy Watrous Smith (SBN 133887)
Binder & Malter, LLP
2775 Park Avenue
Santa Clara, CA 95050
T: (408) 295-1700
F: (408) 295-1531
Email: Heinz@bindermalter.com
Email: Rob@bindermalter.com
Email: Wendy@bindermalter.com

Attorneys for Debtor and Debtor in Possession
Blade Global Corporation

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA - DIVISION 5

In re:

BLADE GLOBAL CORPORATION,

Debtor.

Case No. 21-50275 MEH

Chapter 11

Date: TBD
Time: TBD
Place: Via tele/video conference

**MOTION FOR ORDER AUTHORIZING THE DEBTOR TO OBTAIN POST-PETITION FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363(c), 363(e), 364(c)(1) AND SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULES 4001(b) AND 4001(c)**

**TO THE HONORABLE M. ELAINE HAMMOND:**

Debtor and debtor in possession Blade Global Corporation (the "Debtor") hereby moves this Court for entry of an order substantially in the form attached to this Motion as Exhibit A (the "DIP Order") and, following a final hearing, a final order, for the following relief: authorizing the Debtor to borrow as a post-petition loan ("DIP Loan") of an initial amount of $425,000, and up to a further $425,000, up to a total of $850,000, from its parent in France, Blade SAS on the terms set forth in the Debtor-in-Possession Term Loan Term Sheet dated March 26, 2021 (the "Term

Sheet") attached as Exhibit "A" to the Declaration of Perry Michael Fischer served and filed herewith.

**By its Motion, the Debtor seeks authority to borrow the full amounts set forth above but, as a procedural safeguard, will seek a further order of the Court before disbursing more than $100,000, subject to need, leading up to and following the closing of the sale after Auction.**

The Debtor respectfully represents as follows in support of this Motion:

## I. JURISDICTION AND VENUE

1. The Court has jurisdiction over the matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory basis for the relief requested herein is Bankruptcy Code sections 105, 361, 362, 363, 364, 503(b), and 507 and Bankruptcy Rules 2002, 4001 and 9014.

## II. INTRODUCTORY STATEMENT

3. As more fully set forth herein, the Debtor has an urgent and immediate need for access to cash from Blade SAS for $425,000 in cash following entry of the interim DIP Order and up to $850,000 in total.

4. The Debtor's case was filed in order to facilitate a going concern sale pursuant to marketing process described in the associated Debtor's Motion for Entry of An Order (i) Approving Bidding Procedures in Connection with The Sale of Substantially All of The Debtor's Assets; (ii) Approving Procedures for The Assumption and Assignment of Executory Contracts and Unexpired Leases; (iii) Approving Stalking Horse Bidder and Bid Protections; And (iv) Granting Related Relief [Dkt. #67].

5. The Debtor seeks authority to borrow funds as needed to pay payroll, benefits and data center and equipment until a sale can be finally approved both in France for the assets of Blade set to occur on or about April 30, 2021. After the close of the US sale, which is also scheduled for April 30, 2021, in the Stalking Horse bid, the liability for all ongoing operating expenses will shift to the Buyer. The purpose of this Motion is to fund operations until that

closing. Assuming a timely close, the initial $425,000 borrowed on an interim basis may well be all the DIP funding needed. Depending on the outcome of the sale of Blade SAS French proceeding, it is possible that the borrowing will be minimal or even not needed at all. The request for authority is made to ensure that funds are available if needed. The procedural safeguard limiting disbursements to $100,000 without further order of the Court provides assurance that only funds necessary for operations will be spent.

6. The Debtor's ability to operate until an Auction can occur and the April 30 closing be completed requires financing in the form of the DIP Loan and immediate access to and use of said funds, the absence of which would immediately and irreparably harm the Debtor, its estate and its creditors. Without such funds, the Debtor would be forced to liquidate its assets for far less than the Debtor expects to receive through a sale of such assets under the process the Debtor intends to run, to the detriment of all creditors.

7. Given the Debtor's current financial condition and financing arrangements, the Debtor was unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code. Blade SAS was willing to offer unsecured credit with priority over that of administrative expenses of the kind specified in sections 503(b) of the Bankruptcy Code. The terms of the proposed borrowing are detailed in the Debtor-in-Possession Term Loan Term Sheet

| Term | Description | Location in Term Sheet |
|---|---|---|
| Loan Amount | $850,000 | Page 1 |
| Initial Disb. | $425,000 upon approval of interim borrowing by both French and US Courts | Page 1 |
| Final Disb | $425,000 more upon final approval of interim borrowing by both French and US Courts | Page 1-2 |
| Interest Rate | LIBOR PLUS 5% with LIBOR PLUS 6% for default rate | Page 2 |
| Maturity Date | (i) 365 days after the Initial Closing Date; | Page 3 |
| | (ii) the substantial consumption or effective date of a confirmed plan of reorganization or liquidation; | |
| | (iii) conversion of the Bankruptcy Case to Case under Chapter 7 of the Bankruptcy Code; | |

| | | |
|---|---|---|
| | (iv) appointment of a trustee for the Debtor (other than the current Subchapter V Trustee); | |
| | (v) dismissal of the Bankruptcy Case; | |
| | (vi) thirty (30) days after the entry of the Interim Order if the Final Order has not been entered prior to the expiration of such thirty (30) day period unless extended in writing by Blade SAS; | |
| | (vii) the date on which the Court enters a final order approving a post-petition financing between the Debtor and another Lender(s) or investor(s) (as the case may be) (other than the DIP Lender); | |
| | (viii) consummation of a sale of substantially all of the Debtor's assets under Bankruptcy Code § 363; | |
| | (ix) five (5) business days after the DIP Lender notifies the Debtor and its counsel in writing of an Event of Default which is not subsequently cured or waived by the end of such notice period or extended by the DIP Lender. | |
| Priority | Priority per 11 U.S.C. § 364(c)(1) over all administrative expenses of the kind specified in Bankruptcy Code § 503(b) or 507(b) except for the Carve-Out | Page 3 |
| Carve-Out | (i) unpaid fees of the Clerk of the Court and the U.S. Trustee pursuant to 28 U.S.C. § 1930; (ii) unpaid fees and expenses of the professionals of the Debtor retained by an order of the Court pursuant to Section 327, 328, or 363 of the Bankruptcy Code incurred prior to the occurrence of such Event of Default, to the extent such fees and expenses are (a) within the amounts set forth in the Budget approved by the DIP Lender, (b) subsequently allowed by the Court under Sections 330, 331 or 363 of the Bankruptcy Code, and (c) not otherwise payable from retainers or any professional expense escrow account established by the Debtor; (iii) fees and expenses of the Professionals incurred after the occurrence of such Event of Default in an aggregate amount not to exceed $300,000 in the aggregate, to the extent such fees and expenses are (a) subsequently allowed by the Court under Sections 330, 331 or 363 of the Bankruptcy Code, and (b) not otherwise payable from retainers or any professional expense escrow account established by the Debtor; | Pages 3-4 |

| | | | |
|---|---|---|---|
| | | (iv) fees and expenses of any chapter 7 trustee and any chapter 7 professionals in an aggregate amount not to exceed $25,000; | |
| | | (v) fees and expenses of Mark M. Sharf Subchapter V Trustee (and/or any successor Trustee) which are allowed in this case; and (vi) allowed pre-petition claims for taxes entitled to priority under Section 507(a)(8) of the Bankruptcy Code. | |
| | Events of Default | Debtor shall fail to pay (i) any principal amount that has become due and payable or (ii) interest, regularly scheduled fees any other DIP Facility obligation after such payment has become due and payable within five (5) business days after such payment becomes due or payable; | Pages 5-6 |
| | | Any representation, warranty, report, certificate or other document made or delivered to the DIP Lender pursuant to this Term Sheet, the Interim Order or the Final Order shall have been incorrect in any material respect when made or deemed made; | |
| | | The failure of Debtor to comply in all material respects with any covenant, agreement, representation, warranty, term or condition of the Interim Order, the Final Order and this Term Sheet and if such failure shall continue for a period of 10 calendar days after notice thereof is given by the DIP Lender to the Borrower; | |
| | | The entry of an order in the Bankruptcy Case which stays, modifies (in any manner adverse to the DIP Lender), or reverses the Interim Order or Final Order in any material respect; | |
| | | The conversion of the Bankruptcy Case to a case under Chapter 7 of the Bankruptcy Code; | |
| | | The removal of the Debtor from possession by the Subchapter V trustee; | |
| | | The dismissal of the Bankruptcy Case; | |
| | | The entry of any order which provides relief from the automatic stay otherwise imposed pursuant to Bankruptcy Code § 362 that permits any creditor to (i) realize upon, or to exercise any right or remedy with respect to, any material portion of the estate's assets, or (ii) to terminate any license, the exercise of such right or remedy or such realization or termination would be reasonably likely to have a material adverse effect; | |

Case: 21-50275    Doc# 86    Filed: 04/14/21    Entered: 04/14/21 15:03:45    Page 5 of 15

| | | |
|---|---|---|
| | Subject to the allowance and payment of any amounts due under the Carve-Out, the filing of any application by Debtor without the express written consent of the DIP Lender for the approval of a super-priority claim in the Bankruptcy Case which is *pari passu* with or senior to the priority of the claims of the DIP Lender, or there shall arise any such super-priority claim under the Bankruptcy Code; | |
| | The payment or other discharge by Debtor of any prepetition indebtedness without the written consent of the DIP Lender; | |
| | The filing of any motion by Debtor seeking, or the entry of any order in the Bankruptcy Case: (a) permitting working capital or other financing (other than ordinary course trade debt or unsecured debt) for the Debtor from any person other than the DIP Lender (unless the proceeds of such financing are to be used to pay in full in cash all obligations arising under this Term Sheet, the Interim Order and the Final Order); (b) granting a lien on, or security interest in, estate assets unless such liens are granted in connection with a financing, the proceeds of which are to be applied to the payment in full in cash of all obligations arising under this Term Sheet, the Interim Order and the Final Order); or (d) dismissing the Bankruptcy Case, unless the DIP Lender has sought or consented in writing to such relief by the Court; | |
| | The filing of any pleading by the Debtor challenging the validity, priority granted under, or enforceability of this Term Sheet. | |
| Lender Costs | Capped at $10,000 | Pages 2-3 |
| Default Remedies | Upon three (3) business days' written notice to the Debtor and its counsel, as well as the Subchapter V Trustee (via email) of an Event of Default which is not subsequently cured or waived during such notice period: | Pages 5-7 |
| | (1) The DIP Facility shall mature and any and all DIP Facility obligations shall become due and payable in full in cash; | |
| | (2) The DIP Lender shall have the right to an emergency hearing upon a relief from stay motion on three (3) business days' notice | |

**CERTIFICATION**

8. The undersigned counsel for the Debtor has read the Motion; to the best of my knowledge, information, and belief, formed after reasonable inquiry, the terms of the relief sought in the motion are in conformity with the Court's *Guidelines for Cash Collateral and Financing Motions and Stipulations,* except as set forth above. I understand and have advised the Debtor that the Court may grant appropriate relief under Bankruptcy Rule 9024 if the court determines that a material element of the Motion was not adequately disclosed in the Introductory Statement.

Dated: April 13, 2021　　　　　　　　　　　　BINDER & MALTER, LLP

　　　　　　　　　　　　　　　　　　　　　　By: *Robert G. Harris*
　　　　　　　　　　　　　　　　　　　　　　　　 Robert G. Harris

　　　　　　　　　　　　　　　　　　　　　　Attorneys for Blade Global Corporation

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. BACKGROUND

The Debtor is the U.S. subsidiary of Blade SAS but has failed to operate its successful Shadow platform at a profit, running increasing operating deficits,

For some months prior to the Petition Date, the Debtor explored various strategic alternatives, ranging from raising capital to selling the Debtor's assets (the "Assets"). The companies the Debtor approached included its original investors, including Charter Communications and LG Electronics, Inc., as well as Intel, Apple, NVIDIA, Dell, ASUS, Rakuten, and Lenovo. When proposals for equity investments were rejected, the Debtor turned to proposals for acquisition. Intel did due diligence but, ultimately, failed to agree to a proposal. Charter Communications, an entity that employs a member of the Debtor's Board of Directors, also engaged with the Debtor but similarly failed to agree any proposal. Parallel discussions have been had with a major estate creditor, 2CRSI.

The pre-bankruptcy inability to generate a sale led the Debtor to conclude that the liabilities that accrued during the commercialization efforts of previous years had grown too large to allow the pursuit of any path beyond an asset sale to a buyer who can migrate the data owned by Shadow platform users to its own data facilities.

Blade SAS entered into its own insolvency procedure, *redresement judicaire* (judicial reorganization), on February 26, 2021. In the French procedure, the *administrateur judiciaire,* the official in charge of administrating or helping the company to exit the procedure, took bids for the purchase of the assets of Blade SAS. The initial bid deadline was March 19, 2021. Four bids were received. One was that of a subsidiary of Jezby Ventures, the entity with which the Debtor on the Petition Date entered into a Letter of Intent for purchase of the Assets for the price and on the terms set forth below. Final bids in the French proceeding were due by April 8, 2021. The *administrateur judiciaire* of Blade SAS conducted an auction for the assets of that entity on April 13, 2021. The results of auction will not be finally approved until April 30, 2021.

On April 2, 2021, the French Court approved the disbursement of the first tranche of the proposed DIP Loan of $850,000 of $425,000 on the terms set forth in the Term Sheet. A translated copy of the Order is attached as Exhibit "B" to the declaration of Perry Michael Fischer.

The auction in France took place on April 13, 2021. The bids of Jezby and Scaleway are under consideration for final approval by the French Court.

**U.S. Bankruptcy Case**

On March 1, 2021, the Debtor filed a voluntary petition for relief under the Bankruptcy Code in this Court. The Debtor continues to operate its business and manage its affairs as a debtor in possession pursuant to section 1184 of the Bankruptcy Code.

The Debtor determined in its business judgment to conduct a competitive bid-and-sale process for the orderly sale of substantially all of the Debtor's Assets under sections 363(b) and (f) of the Bankruptcy Code. After extensive and arms-length negotiations, the Debtor and Blade Acquisition, Inc. (the "Stalking Horse Bidder"), the U.S. acquisition entity for Jezby Ventures, entered into an Asset Purchase Agreement.

## II. PROPOSED DIP FINANCING

### A. The DIP Loan is Critical to Allow the Debtor's Proposed Sale Process to Occur.

The Debtor operates with negative cash flow of roughly $700,000 per month on average. The Debtor presently has $1 million in cash on hand. As set forth in the budget attached as Exhibit "C" to the accompanying declaration of Perry Michael Fischer, the Debtor's operational costs will likely equal cash on hand by the April 30 projected closing date. The costs of operation for this period are as follows: $250,000 in payroll and benefits for 22 employees and some $870,000 in payments to the Debtor's equipment lessors and data room providers vendors including Internap Corporation, DRT, Quality Technology Services, Equinix, and Evotech. The obligations to 2CRSI associated with equipment used in connection with the business will total some $430,000. The Debtor presently has $1,002,000 in cash in its DIP account. Its projections show it will use all but $22,000 of that money if the close occurs on April 30th. Without DIP financing, the Debtor will, if projections are off, run out of cash be unable to make its final April payroll, and leave accrued and unpaid vendor liabilities.

///

///

///

## III. REQUIRED DISCLOSURES FOR CASH COLLATERAL AND FINANCING MOTIONS

Pursuant to the Court's *Guidelines for Cash Collateral and Financing Stipulations* ("Guidelines"), the Debtor makes the following required disclosures:

| Disclosure | Provision | Reason for Provision | Location in Term Sheet |
|---|---|---|---|
| The granting of priority pursuant to Bankruptcy Code § 364(c) | DIP Lender is afforded an unsecured priority claim with carve-outs for professional fees, Subchapter V and trustee fees | Priority was required for the administrateur judicaire of Blade SAS to agree to provide DIP financing for the Debtor | Pages 2-3 |

## IV. MEMORANDUM OF POINTS AND AUTHORITIES

### A. The DIP Loan Should Be Approved Under Bankruptcy Code Section 364(c), 364(d)(1).

1. The Debtor needs cash to meet ongoing obligations necessary to run its business and administer its chapter 11 case while it goes through an orderly and expedient going concern sale process for the benefit of the estate and all creditors. Pursuant to section 364(c) and 364(d)(1) of the Bankruptcy Code, the Debtor requests authority to enter into the Term Sheet as an administrative expense, having priority over other administrative expenses except for the Carve-Out.

Section 364(c) of the Bankruptcy Code provides, in pertinent part, that:

> **(c)** If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt—
>
> **(1)** with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title;

The Debtor's execution of the Term Sheet is an exercise of its sound business judgment that warrants approval by the Court. The Debtor has undertaken an analysis of the Debtor's projected financing needs during the pendency of this Chapter 11 Case and the Debtor's sale process. Based on that analysis, the Debtor determined that it needs post-petition financing to continue operating during the sale and marketing period and to support its restructuring activities.

1. Accordingly, the Debtor began negotiating with Blade SAS regarding the terms of post-petition financing. Based on the advice of its professionals, the Debtor has determined in its sound business judgment that the terms of the Term Sheet provide a greater amount of financing on more favorable terms than any other reasonably available alternative and are necessary to permit the April 28, 2021 Auction to proceed. Specifically, the DIP Loan will provide the Debtor with access to borrowing availability to pay its limited operating expenses, including payroll, benefits and payments to data center and equipment providers

Without the DIP Loan, the Debtor risks not having sufficient cash flow to pay for these items. Unless these expenses are paid, the Debtor will be forced to cease its limited operations, which would result in irreparable harm to the value of its assets, which it seeks to sell as a going concern under section 363 of the Bankruptcy Code. The DIP Loan therefore represents the best chance of survival for the Debtor to effectuate the sale, and should be authorized as being a proper exercise of the Debtor's business judgment.

The DIP Loan is the Debtor's best available financing options. The availability of the DIP Loan under the DIP Loan Agreement will provide the Debtor with the necessary liquidity and time to conduct and conclude the sale process for substantially all of its assets. Further, the terms of the DIP Loan Agreement are competitive and substantially less costly than alternative post-petition financing.

In light of the Debtor's inability to find alternative post-petition financing and consent to cash collateral use on more favorable terms, and the various benefits afforded to all parties in interest by the Debtor's entry into the Term Sheet is appropriate and should be approved,

The Debtor respectfully submits that the DIP Loan satisfies section 364(c) f the Bankruptcy Code. The best credit terms available to the Debtor are those set forth in the Term Sheet. Thus, the Debtor believes that it is fair, reasonable, and necessary for the Court to approve the DIP Loan and enter the DIP Order. In addition to representing the best terms presently available to Debtor, the DIP Financing is also in the best interests of the Debtor's estate. The DIP Loan will provide the Debtor needed funding to maintain and operate its business and to run the

Debtor's proposed sale process. The DIP Loan therefore is plainly in the best interests of Debtor's estate.

## VI. NOTICE

Notice of the Motion will be provided to the following parties or, in lieu thereof, on their counsel, if known: (a) the Office of the United States Trustee, (b) the creditors appearing on the list filed in accordance with Rule 1007(d) of the Federal Rules of Bankruptcy Procedure, (c) parties that file with the Court and serve upon the Debtor requests for notice of all matters in accordance with Bankruptcy Rule 2002, and (e) any known parties that assert a lien on the Debtor's assets. The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

## VII. CONCLUSION

Based upon the foregoing, the Debtor requests entry of the DIP Order under sections 105, 361, 362, 363, 364 and 507 of the Bankruptcy Code, Bankruptcy Rule 4001 and local Bankruptcy Rule 4001-2: authorizing the Debtor to (a) enter into and incur credit under the Term Sheet of $850,000 with the added procedural safeguard that the Debtor will seek a further order of the Court to authorize total disbursements in excess of $100,000, based on need.

Dated: April 13, 2021       BINDER & MALTER, LLP

By: /s/ Robert G. Harris
    Robert G. Harris
Attorneys for Debtor and Debtor in Possession
Blade Global Corporation

# EXHIBIT A

```
 1  Heinz Binder, Esq. (SBN 87908)
    Robert G. Harris (SBN 124678)
 2  Wendy Watrous Smith (SBN 133887)
    Binder & Malter, LLP
 3  2775 Park Avenue
    Santa Clara, CA 95050
 4  T: (408) 295-1700
    F: (408) 295-1531
 5  Email: Heinz@bindermalter.com
    Email: Rob@bindermalter.com
 6  Email: Wendy@bindermalter.com

 7  Attorneys for Debtor and Debtor in Possession
    Blade Global Corporation
 8
```

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA - DIVISION 5

| In re: | Case No. 21-50275 MEH |
|---|---|
| BLADE GLOBAL CORPORATION, | Chapter 11 |
| Debtor. | Date: TBD<br>Time: TBD<br>Place: Via tele/video conference |

**[PROPOSED] INTERIM ORDER AUTHORIZING THE DEBTOR TO OBTAIN POST-PETITION FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363(c), 363(e), 364(c)(1) AND SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULES 4001(b) AND 4001(c)**

The Motion for Order Authorizing the Debtor to Obtain Post-Petition Financing Pursuant To 11 U.S.C. §§ 105, 361, 362, 363(c), 363(e), 364(c)(1) And Scheduling A Final Hearing Pursuant to Bankruptcy Rules 4001(b) and 4001(c) brought by debtor and debtor in possession Blade Global Corporation (the "Debtor") came on for hearing at the date, time and place set forth above. Robert G. Harris, Esq. of Binder & Malter, LLP appeared for the Debtor. Other appearances were noted on the record. The Court, having considered the pleadings, evidence and arguments of counsel, hereby OVERRULES all objections and GRANTS the Motion on an interim basis as follows.

///

IT IS THEREFORE ORDERED that

1. The Debtor be and hereby is authorized to borrow as a post-petition loan ("DIP Loan") an initial amount of $425,000 from its parent in France, Blade SAS on the terms set forth in the Debtor-in-Possession Term Loan Term Sheet dated March 26, 2021 (the "Term Sheet") attached as Exhibit "A" to the Declaration of Perry Michael Fischer.

2. The Debtor may not disburse more than $100,000 of the sums borrowed without further order of the Court leading up to and following the closing of the sale after Auction.

3. Approval of the interim DIP Loan as final and the further $425,000 Blade SAS has been authorized to loan to the Debtor shall be the subject of a final hearing on the Motion set for May __, 2021.

***** END OF ORDER *****